IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MINERVA RAMIREZ, *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | Civil Action No. 3:07-CV-1719-N |
| § | | |
| BANTEK WEST, INC., *et al.*, § | | |
| § | | |
| Defendants. § | | |

## ORDER

This Order addresses Defendant Streit Manufacturing, Inc.'s ("Streit") motion to dismiss for lack of personal jurisdiction [48].[1]  Because the Court holds that it has specific jurisdiction over Streit, it denies the motion.

### I. STREIT'S CONTACTS WITH TEXAS

Streit is a Canadian corporation that manufactures and distributes commercial armored vehicles to clients such as the military, police departments, and private security companies. In 2001, Streit modified and sold an armored 2001 Ford E350 van to Emkay, Inc., who in turn leased it to Bantek West, Inc. ("Bantek").  According to Plaintiffs Minerva and Dorothy Ramirez (collectively, the "Ramirezes"), Streit shipped the vehicle directly from its facilities in Canada to a Bantek location in Dallas, Texas.

---

[1]Upon consideration of the motion and relevant pleadings, the Court grants Plaintiffs Minerva and Dorothy Ramirez's motion for leave to amend the complaint to allege jurisdiction and clarify which parties remain involved in the suit [50].

ORDER – PAGE 1

About six years later, a Bantek employee lost control of the vehicle while driving on Interstate 35 in North Texas. The vehicle rolled over and ejected a passenger, Robert Ramirez, who died as a result of the crash. The Ramirezes now assert strict liability and negligence causes of action against Streit. Streit moves to dismiss this action for lack of personal jurisdiction.

## II. PERSONAL JURISDICTION STANDARD

In a diversity action, personal jurisdiction exists if (1) the forum state's long-arm statute confers such jurisdiction, and (2) the forum state's exercise of that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997)). Where, as in Texas, the forum state's long-arm statute has been interpreted to extend to the limits of due process, a court need only determine whether personal jurisdiction in the forum state is constitutionally permissible. *See Religious Tech. Center v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003) ("Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process."). The Due Process Clause permits the exercise of personal jurisdiction when (1) the defendant has "purposely availed" himself of the protections and benefits of the forum state by establishing "minimum contacts" with that state, and (2) that exercise does not offend "traditional notions of fair play and substantial

justice." *See Paz*, 445 F.3d at 813 (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001)).

Minimum contacts may give rise to either "specific" or "general" personal jurisdiction. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). "Where a defendant 'has continuous and systematic general business contacts' with the forum state, the court may exercise 'general jurisdiction' over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise 'specific' jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). Courts in the Fifth Circuit engage in a three-step analysis for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

The plaintiff bears the burden of establishing that the defendant has sufficient minimum contacts with the forum state. *See Luv N' Care*, 438 F.3d at 469. However, the plaintiff need make only a prima facie showing that personal jurisdiction is proper; the plaintiff need not demonstrate that personal jurisdiction exists by a preponderance of the evidence. *See Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982) ("[Plaintiff] need not . . .

establish personal jurisdiction by a preponderance of the evidence; prima facie evidence of personal jurisdiction is sufficient."). In resolving a dispute over personal jurisdiction, a court may consider the "pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). Further, a court must accept all of the uncontradicted allegations in the plaintiff's complaint as true and also resolve all conflicts of fact in favor of the plaintiff. *See Paz*, 445 F.3d at 812 (5th Cir. 2006) ("[I]n determining whether a *prima facie* case for personal jurisdiction exists on a motion to dismiss, 'uncontroverted allegations in the plaintiff's complaint must be taken as true.'" (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 2005))).

If a plaintiff meets its burden and establishes minimum contacts between the defendant and the forum State, "the burden of proof shifts to the defendant to show that the assertion of the jurisdiction is unfair and unreasonable." *Central Freight Lines v. APA Transport Corp.*, 322 F.3d 376, 384 (5th Cir. 2003). Courts consider various factors in this inquiry: (1) the burden upon the nonresident defendant; (2) the interest of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interests in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*; *see Asahi Metal Indus. Co., Ltd. v. Superior Court of Calif.*, 480 U.S. 102, 115 (1987).

### IV. THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER STREIT

Here, the Ramirezes assert that Streit is subject to both specific and general jurisdiction in Texas. The Court turns first to the three-step analysis for specific jurisdiction. Because the Court holds that it has specific jurisdiction over Streit, it need not reach the issue of whether it has general jurisdiction.

#### *A. Streit Intentionally Directed Its Activities Toward Texas*

The first prong of the specific jurisdiction inquiry is "whether [the defendant] purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *McFadin*, 587 F.3d at 759 (citing *Seiferth*, 472 F.3d at 271). A single, substantial act directed toward a forum is sufficient to support specific jurisdiction where the act gives rise to the claim asserted. *Moncrief Oil Intern. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983)). However, "[t]he defendant 'must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *McFadin*, 587 F.3d at 759 (citing *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871-72 (5th Cir. 1999)).

In the context of a products liability action, the single act of placing a product in the stream of commerce with the expectation that it will be purchased or used by consumers in the forum state is sufficient to support specific jurisdiction. *Seiferth*, 472 F.3d at 271 (5th Cir. 2006) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980))

(The "stream of commerce" theory "permits the exercise of personal jurisdiction over a nonresident defendant that 'delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'"); *see Nuovo Pignone, SPA v. Storman Asia M/V*, 310 F.3d 374, 380 (5th Cir. 2002). The Fifth Circuit has consistently held that "'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'" *Luv N' Care*, 438 F.3d at 470 (citing *Ruston*, 9 F.3d at 419).

Here, the parties dispute whether Streit shipped the vehicle directly to Dallas, Texas. The initial sales invoice from Streit to Bantek West lists the billing address as Bantek West's Colorado office and the shipping address as "same." *See* Defs.' App. at 5 [49-2].[2] However, Streit's internal records indicate that the vehicle's was intended for Dallas. Streit has not located any shipping records that indicate the route or timing of the shipment. David Hale, Streit's purchasing manager, testified at his deposition: "The vehicle went to Dallas. . . . Whether it was changed after it was shipped and they asked us to ship it there, that I don't know. Originally, it was supposed to go to Colorado." Pls.' App. at 32 [64-2]; *see also* Pls.' App. at 33. Thus, while the circumstances of the shipment are unclear, Streit was aware that

---

[2]Neither party discusses whether the fact that the vehicle was leased impacts the stream of commerce inquiry in this case. Because the defendant in this case sent the allegedly defective product directly to the lessee in the forum state, the Court declines to address this open issue here. *See Seiferth*, 472 F.3d at 274-75 (declining to decide whether to extend the stream of commerce theory to leased products).

ORDER – PAGE 6

the vehicle's delivery point was Dallas. *Id.* Streit documents maintained after the shipment list the vehicle's location as either "TX" or "Dallas." *See* Pls.' App. at 51, 60.

Assuming that Streit shipped the vehicle directly to Dallas, the Court need not engage in a stream of commerce inquiry.[3] Rather, it sufficient that Streit purposefully directed the sale of its goods to the forum state. In *McFadin*, the Fifth Circuit held that a manufacturer that hired a sales representative to sell bags to prospective retailers in Dallas purposefully directed the sale of its goods to Texas. *See McFadin*, 587 F.3d at 763. It stated: "[t]his is not a case where the court is forced to look to defendants' placement of products in the stream of commerce or the effects of its actions outside the forum state within the state. Here, the Gerbers purposefully directed the sale of their goods, through Brockman, in Texas, thus allegedly committing a tort while availing themselves of the Texas market." *Id.* The court concluded that "[s]uch action is sufficient to establish minimum contacts with Texas." *Id.* Likewise, to the extent that Streit shipped the vehicle directly to Dallas, this single act is sufficient to support specific personal jurisdiction.

Moreover, even if Streit shipped the vehicle to Colorado, it purposefully directed its activities towards Texas when it placed the vehicle in the stream of commerce knowing that it was intended for Dallas.[4] There is no question that Streit could foresee that its product

---

[3]"When alleged jurisdictional facts are disputed, we must resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction." *Paz*, 445 F.3d at 813 (5th Cir. 2006) (citing *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993)).

[4]Assuming that Streit shipped the vehicle directly to Dallas, the Court need not engage in a stream of commerce inquiry. *See McFadin*, 587 F.3d at 763. In *McFadin*, the Fifth Circuit held that a manufacturer that hired a sales representative to sell bags to prospective retailers in Dallas and agreed to pay the representative a ten percent commission purposefully

would make its way to Texas, as its own records indicate that Dallas was the vehicle's ultimate destination. Streit's contacts with Texas are not random, fortuitous, or attenuated, but rather reflect the company's intentional choice to serve a customer in the state. Moreover, Bantek did not make a unilateral decision to take the vehicle to Texas after it purchased and received it. Instead, Streit shipped the vehicle knowing that it was intended for the forum state, where it was later involved in the accident at issue.[5]

Thus, the Court holds that regardless of whether Streit shipped the vehicle to Dallas or Colorado, it intentionally directed its activities towards Texas, such that it could reasonably anticipate being haled into Court there.

### B. This Action Arises Out of Streit's Forum-Related Contacts

The second prong of the specific jurisdiction inquiry is whether the underlying cause of action "arises out of" the defendant's contacts with the forum state. "The proper focus

---

directed the sale of its goods to Texas. It stated: "[t]his is not a case where the court is forced to look to defendants' placement of products in the stream of commerce or the effects of its actions outside the forum state within the state. Here, the Gerbers purposefully directed the sale of their goods, through Brockman, in Texas, thus allegedly committing a tort while availing themselves of the Texas market." *Id.* The Court concluded that "[s]uch action is sufficient to establish minimum contacts with Texas." *Id.* Likewise, to the extent that Streit shipped the vehicle directly to Dallas, this single act is sufficient to support specific personal jurisdiction.

[5]The facts at issue in this case are similar to those in *Ruston*. There, the Fifth Circuit noted: "[the defendant] intentionally placed its products into the stream of commerce by delivering them to a shipper destined for delivery in Texas. At the time the goods left [the defendant's] plant in Minnesota, [the defendant] not only could have foreseen that the products might end up in Texas, it knew as a fact that the products were going to be delivered to a specific user in Houston, Texas." *Ruston*, 9 F.3d at 420; *see also See Luv N'Care*, 438 F.3d at 470 (holding in a trademark infringement case that the distribution of allegedly infringing products to Wal-Mart, knowing that Wal-Mart would sell them in Louisiana, was sufficient to support specific personal jurisdiction in Louisiana).

ORDER – PAGE 8

of the personal jurisdiction analysis is on the 'relationship among the defendant, the forum, and the litigation.'" *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008) (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)). The sale of a product purposefully directed to the forum state is sufficient to satisfy this inquiry where the product causes alleged injury in the forum state. For example, in *McFadin*, the Fifth Circuit held that trademark infringement claims arose directly from the sale of allegedly infringing handbags in the forum state. 587 F.3d at 763. In *Nat. Union Fire Ins. Co. of Pittsburgh v. Am. Pipe Fabricators, Inc.*, an "alleged defective pipe was knowingly shipped to and used in a Louisiana facility." The district court held: "there can be no meaningful dispute that the lawsuit arises from or relates to the [defendant's] contact with Louisiana. That is, but for [the defendant's] purposeful contact with Louisiana, this litigation would not exist." 2005 WL 1155858, at *4 (E.D. La. 2005).

Here, the Ramirezes' claims for strict product liability and negligence arise directly out of is Streit's shipment of the vehicle knowing that it was intended for Dallas.[6] A Bantek employee lost control of the vehicle while driving in the greater Dallas area in the course of his employment. Here too, but for Streit's shipment of the vehicle, this litigation would not exist. Thus, the Court finds that the Ramirezes claims "arise out of" Streit's forum-related contacts.

---

[6]"A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth*, 472 F.3d at 274. Here, the Ramirezes claim that the same forum contact – placement of the vehicle in the stream of commerce – supports both causes of action. Thus, the Court does not discuss each cause of action separately.

### *C. The Exercise of Personal Jurisdiction is Fair and Reasonable*

The final inquiry in a specific jurisdiction analysis is whether the exercise of personal jurisdiction is fair and reasonable. "In determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and 'it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown.'" *McFadin*, 587 F.3d at 759-60. Courts examine five factors in this inquiry: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* at 760.

Streit does not argue that the exercise of jurisdiction is unfair or unreasonable. Thus, it fails to meet its burden of proof on this element. The Court notes in passing, however, that there is no evidence to suggest that any of the above-listed factors weigh heavily against the exercise of personal jurisdiction. Accordingly, the Court holds that the exercise of personal jurisdiction is fair and reasonable.

### CONCLUSION

Because the Court finds that it has specific personal jurisdiction over Streit, it denies Streit's motion to dismiss.

Signed May 11, 2010.

_____
David C. Godbey
United States District Judge